UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL P. SOCHA, | ) | Case No. 1:03 CV 1847 |
| | ) | |
| Petitioner, | ) | Judge Patricia A. Gaughan |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| JULIUS WILSON, WARDEN, | ) | (Docket Nos. 1, 30, 31) |
| | ) | |
| Respondent. | ) | Magistrate Judge James S. Gallas |
| | ) | |

*Petition for Habeas Corpus under 28 U.S.C. §2254:*

Petitioner Michael Socha was convicted on the April 30, 1999 for the murder of Edward Edwards, his former brother-in-law, with whom in February 1999 he had settled litigation involving the estate of Mr. Socha's sister.  Mr. Socha thereafter exhausted his direct appeal and subsequent state post-conviction relief proceedings (See *State v. Socha*, 93 Ohio St.3d 1414, 754 N.E.2d 260 (Table 2001); 96 Ohio St.3d 1491, 774 N.E.2d 765 (Table 2002)).  He commenced this proceeding for federal habeas corpus relief under 28 U.S.C. §2254 raising four grounds for relief.  Respondent concedes that petitioner has exhausted his state remedies with respect to those grounds.

As the state appellate court restated the facts, there were 18 witnesses for the prosecution plus several others for Mr. Socha on his claims of self-defense.  Deputy Coroner McCollum performed an autopsy and testified that: the victim died of injuries resulting from blows to his skull and brain; each blow was of sufficient force to have caused death; and the victim had defense wounds on his body.  She also noted that the victim had consumed approximately seven drinks of alcohol within one to three hours of his death. See *State v. Socha*, 2001 WL 498613*1 (Ohio App.

1:03 CV 1847                                        2

8 Dist.).  Other testimony placed Mr. Socha at the Metroparks Rocky River Reservation with his

pickup truck where he was seen dumping the body in the place where the body was later recovered.

Testimony from police officers established that Mr. Socha was later arrested at his home where he

was found with blood on his shirt and hands, but with no injuries, and the fire department was called

because a smoldering barrel of blood-soaked sawdust was found in the residence.  After the fire was

extinguished police officers observed blood on the kitchen floor, a hammer with blood on it and a

trail of blood leading to the barrel, and  DNA testing results were consistent with the victim's blood

and not the defendant's and no blood was observed on the broken goblet  in defendant's house.  *Id.*,

at *1-*2.  The broken goblet is a critical piece of evidence for Mr. Socha's defense.


        Mr. Socha does not deny that he committed the murder.  His claim is one of self-defense.

As the state appellate court related:

> Defendant, a semi-retired lawyer and former Cleveland councilman, was the
> final witness.  He testified that he purchased his residence with his sister
> Lucy and lived in it for twenty-two years.  He stated that his sister had
> unknowingly entered into an illegal marriage with defendant, who had not
> obtained a divorce from his wife.  Defendant did not learn about this problem
> until his sister died in August 1993.
>
> On February 16, 1999, about six weeks before this incident, defendant and
> the victim ultimately settled the probate court litigation concerning her estate.
> Defendant received the residence he purchased with his sister, and the victim
> received money and certain specific property listed in the settlement
> agreement.
>
> Defendant stated that the victim came over to his house on April 30, 1999
> with a clock, which defendant stated he was not interested in.  Rather,
> defendant wanted some pictures of his parents, pictures that the victim had
> retained.  The victim asked him for a drink, and they both sat drinking for
> hours watching a videotape deposition of [the sister] Lucy.  Defendant
> maintained that the victim left at 5:40 p.m. and that defendant also left for

1:03 CV 1847                                        3

> Lakewood.  Defendant stated that when he returned ten minutes later to get a key he had forgotten, the victim was in his kitchen going through papers located with the videotape deposition.
>
> Defendant gave the following account.  He told the victim to leave, but the 78-year old victim got between him and the phone, stated he was going to take the videotape, and ordered defendant not to call the police.  The altercation escalated into pushing.  Defendant was knocked down twice, and the victim broke a glass goblet, which he jabbed at defendant.  The victim tried to stab him again, so defendant swung the hammer he had picked up.  Defendant fell down and tried to escape, but the victim attacked him again.  Defendant struck him with the hammer again.
>
> Defendant stated he put the victim in a tarp, drove to the Metroparks, and dumped the body in the woods because he was scared.  He drove home despite the orders of the park rangers directing him to stop.  He stated that he also remembered the fire and calling his friend Burger. He maintained that he did not intend to kill the victim and was in fear for his own life.

*State v. Socha*, 2001 WL 498613 *3.

> Ground one:    Petitioner was denied due process and his right to a fair trial protected under the 14th Amendment to the United States Constitution when the trial court would not allow expert opinion evidence which would have been extremely valuable and helpful to the jury in deciding the case.

Prior to trial, defense counsel filed a motion entitled "motion to permit psychiatric evaluation of defendant."  Attached to the motion was a psychiatric evaluation of Mr. Socha conducted by Dr. Bertschinger, a five-page report in which the doctor concluded:

> Pertaining to the defendant's behavior following the physical confrontation, it is my opinion that the defendant was overwhelmed by the reality of what had happened, but his reason and judgment were impaired by the alcohol and that his subsequent acts were irrational and symbolic as opposed to any meaningful attempts to cover his crime.

(See Memorandum in Support of Jurisdiction at 12-13, Exhibit Ex. 18, ECF No. 11).

1:03 CV 1847                                        4

At trial defense counsel wanted the expert to testify to assist the jury in determining Mr. Socha's state of mind and premised his legal arguments on *State v. Koss*, 49 Ohio St.3d 213, 551, N.E.2d 970 (1990), which had permitted expert testimony regarding battered-woman syndrome (TR. 12-17).  Mr. Socha argued that this psychiatrist's report showed "his actions subsequent to the homicide and explained why he did what he did."  *Id.*  In briefing to the Ohio Supreme Court he contended that the state court's denial of expert testimony hindered his ability to present a defense and to call witnesses on his behalf as outlined in *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).


The standard of review as recently summarized in *Holmes v. South Carolina* is:

> Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'  *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636.  This right is abridged by evidence rules that 'infring[e] upon a weighty interest of the accused' and are 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'  *Scheffer, supra,* at 308, 118 S.Ct. 1261.
>
> . . .
>
> While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.  An application of this principle is found in rules regulating the admission of evidence.

*Id.*, 547 U.S. -, 126 S.Ct. 1727, 1731, 1732, 164 L.Ed.2d 503 (2006).

1:03 CV 1847                                  5

Mr. Socha begins his challenge of the state court decision contending there was error in factual findings made by the state appellate court on his attempt to introduce psychiatric testimony. The state appellate court found that Mr. Socha "sought to introduce his report into evidence," failed to preserve the error by not proffering the "excluded evidence, and sought to introduce "an unsworn report containing psychiatric opinions." See *Socha*, 2001 WL 49861*6.  The trial record rebuts clearly and convincingly, these determinations by the state appellate court for purposes of 28 U.S.C. §2254(e)(1).  The trial record shows that Mr. Socha was seeking to introduce expert testimony and the trial court understood the motion as such but denied it because the testimony would not assist the trier of fact on the self-defense claim (TR. 15), and that Mr. Socha was not "going to get it in through somebody else."  (TR. 17).  The record supports Mr. Socha's request for the trial court to allow "psychiatric testimony" (TR. 14).

The state appellate court found "the assignment lacks merit" and dismissed Mr. Socha's arguments as failing to preserve the issue for appeal.  First, the state appellate court treated this matter as a denial of a motion *in limine* with reference to *State v. Koss*, 49 Ohio St.3d at 214 (expert evidence proffered) and *State v. Grubb*, 28 Ohio St.3d 199, 503 N.E.2d 142 (1986).  *State v. Grubb* stated in syllabus no. 2 that it is incumbent upon the defendant who has been temporarily restricted from introducing evidence by virtue of a motion *in limine* to seek the introduction of the evidence by proffer and to preserve any objection on the record for purposes of appeal.  *Grubb*, 28 Ohio St.3d at 199 (Syllabus ¶2).

1:03 CV 1847                                        6

This reasoning though is unpersuasive because by its operative definition, a motion *in limine* seeks to limit examination of a witness or exclude evidence.  See *Grubb*, 28 Ohio St.3d at 201 (referencing Palmer, Ohio Rules of Evidence Rules Manual (1984), at 446); *State v. Mauer*, 15 Ohio St.3d 239, 158-60, 473 N.E.2d 768, 787 (1984) (motion *in limine* by defendant to exclude "hypnotically refreshed" state witness testimony).  Further, although the state appellate court relied on *State v. Koss*, no motion *in limine* was involved in *Koss*.  Rather, the trial court had disallowed expert testimony on the basis that it was irrelevant and immaterial to the issue of self-defense (*Koss*, 49 Ohio St.3d at 215).  There was a proffer in *Koss*, but no procedural rule was at issue. Consequently the state appellate court's treatment of the motion as a motion *in limine* was not well-grounded on state law.

The state appellate court secondly based dismissal on the fact that the psychiatrist's report was "unsworn."  Mr. Socha, though, was not seeking to introduce the five-page report for the jury's consideration.  As the trial court correctly understood, Mr. Socha sought to introduce the psychiatrist's *testimony*, not an "acknowledged document" under Ohio Evid. R. 902(8).

The state appellate court also relied on a failure to proffer the evidence.  This reason comes nearer the target as a valid reason, but is inconsistent with the state court's assumption that the written report was the evidence to be admitted.  *State v. Koss*, illustrates the application of Ohio Evid. R. 103(A)(2) and 103(B), that an "offer" of the evidence is required to be made to preserve the objection to exclusion of evidence.  In *Koss*, a proffer was made of what the experts would have *testified*.  *Id.*, 49 Ohio St.3d at 214.  The state decision, though, rested on the "unsworn" report from

1:03 CV 1847                                    7

the psychiatrist.  The state court addressed only the "excluded evidence," i.e., the "unsworn" report from the psychiatrist, and failed to address the issue before it, the correctness of the trial court's ruling excluding the psychiatrist's testimony.

There appears to be some confusion on the part of the state appellate court in this matter. As a result, the state appellate court's findings and procedural default are not firmly grounded. "When a record reveals that a state court's reliance upon its own rule of procedural default is misplaced [the reviewing court] should be reluctant to conclude categorically that federal habeas corpus review of the purportedly defaulted claim is precluded."  *Greer v. Mitchell*, 264 F.3d 663, 675 (6th Cir. 2001), *cert. denied*, 535 U.S. 940 (2002); *Hill v. Mitchell*, 400 F.3d 308, 314 (6th Cir. 2005).

The undersigned consequently is obliged to resolve what standard of review must be applied when the state court has avoided addressing the federal constitutional claim raised before it.  There are three options: the deferential standard provided under §2254(d); the *de novo* standard, and the "intermediate approach."  See *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) (*de novo*); *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000), *cert. denied*, 532 U.S. 947 (2001) (discussing alternate standards); *McKenzie v. Smith*, 326 F.3d 721, 726-27 (6th Cir. 2003), *cert. denied*, 540 U.S. 1158 (2004) (same); *Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005) (same).  The gist of circuit precedent is that when there is a decision, deference is accorded under §2254(d) to the state court decision under the "intermediate approach." *Moldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005); *Howard*, 405 F.3d at 467.  When there is no decision or "no results," federal review is *de novo*.  See

1:03 CV 1847                                    8

*Wiggins v. Smith*, 539 U.S. at 534, 123 S.Ct. at 2542 (*de novo* when there was no state court decision on second prong of *Strickland* test).   When the state court has failed to articulate a decision or provide a rationale, the district court must distinguish between a situation of "no results" from that of "no reasoning".   *Howard v. Bouchard*, 405 F.3d at 467; *McKenzie*, 326 F.3d at 727.   As illustrated in *McKenzie*, the "no reasoning" situation occurs when the state court has issued a summary order, which fails to explain its reasoning, as opposed to the situation where no state court has "directly addressed the specific issue."   In the latter situation there are "no results" for the federal court to defer, and *de novo* review by the federal court is required.  See *Wiggins v. Smith*, 539 U.S. at 534, 123 S.Ct. at 2542;  *McKenzie*, 326 F.3d at 327.


Although the state appellate court did rely on two poorly-founded grounds for procedural default, it did, nonetheless, begin its discussion stating that, "this assignment lacks merit."  *Socha*, 2001 WL 498613*6.  Consequently the undersigned finds that the deferential rather than *de novo* standard of review would apply to analysis but under either standard of review, the result would be the same.  As the state trial court found, the psychiatrist's testimony (based on the five-page report before the court) was not material to self-defense.  Under Ohio law self-defense is established in part by proof of a "bona fide belief" that there was imminent danger of death or great bodily harm and that the only means to escape such danger was the use of deadly force.  See *State v. Koss*, 49 Ohio St.3d at 215; *State v. Jackson*, 22 Ohio St.3d 281, 284 (1986).[1]

---

[1] Mr. Socha in his traverse (Docket No. 27) argues for the application of *Maples v. Stegall* and for *de novo* review. *Id.* at 10-11.  However as explained, the undersigned believes that deferential review would apply because there is an "unexplained" state decision on the merits.  The undersigned believes that this unexplained decision can be separated from the state appellate court's ill-grounded application of procedural defaults.

1:03 CV 1847                                    9

*State v. Koss*, the purported model for Mr. Socha's arguments supporting self-defense, held in the third syllabus, that "[a]dmission of expert testimony regarding the battered woman syndrome does not establish a new defense or justification.  It is to assist the trier of fact to determine whether the defendant acted out of honest belief that she is in imminent danger of death or great bodily harm and that the use of such force was her only means of escape."  *Koss*, 49 Ohio St.3d at 213 (syllabus no. 3).

Mr. Socha had argued in state court that the psychiatrist's testimony would establish his state of mind which was "crucial to this defense."  See *State v. Koss*, 49 Ohio St.3d at 215.  This subjective component requires the jury to determine "whether the defendant had reasonable grounds for an honest belief that he was in imminent danger and asked what the jury would have done if they were in the position of defendant with the defendant's characteristics, knowledge or lack of knowledge, under the same circumstances and conditions that surrounded defendant at the time. *Koss* at 216.

The trial court was presented with a jumble of theories from  Mr. Socha .  He had argued that he was suffering from dementia and that he was intoxicated,[2] both of which are separate affirmative

---

[2] Mr. Socha had argued dementia.  That issue was raised before the state appellate court, but was omitted in the appeal to the Ohio Supreme Court.  There was certainly no expression to the trial court that Mr. Socha was seeking to introduce the affirmative defense of insanity.  This is firmly established by the fact that Mr. Socha pled not guilty as opposed to not guilty by reason of insanity.

Finally, there was the affirmative defense of intoxication which was not expressly brought to  the trial court's attention.  This defense was waived by Mr. Socha's failure to request a separate instruction on intoxication.  Granted the psychiatrist did state that Mr. Socha's "reasoning and judgment were impaired by the alcohol" but impaired judgment which is the basis for the intoxication defense is separate from the affirmative defense of self-defense.

1:03 CV 1847                                   10

defenses in their own right.  See *State v. Poole*, 33 Ohio St.2d 18, 19-20, 294 N.E.2d 888, 62 O.O.2d

430, 63 A.L.R.3d 932 (1973) (among the affirmative defenses in a criminal case are self-defense,

duress, insanity and intoxication and they must be proved by defendant by a preponderance of the

evidence); *State v. Humphries*, 51 Ohio St.2d 95, 364 N.E.2d 1364, 5 O.O.3d 89 (1977) (discussing

defense of insanity); *State v. Baker*, 88 Ohio App.3d 204, 623 N.E.2d 672 (9th Dist. 1993) (self-

defense).  The novel issue in *Koss* was the use of expert witness testimony to bolster self-defense.

It has been well established that specific instances of a deceased's prior conduct, as well as the

perpetrator's knowledge of the deceased's reputation for violence, were admissible to establish

subjective state of mind.  See *State v. Carlson*, 31 Ohio App.3d 72, 73, 508 N.E.2d. 999 (1986);

*McGaw v. State*, 123 Ohio St. 196, 200, 174 N.E.2d 741 (1931); *Baker*, 88 Ohio App.3d at 208, 623

N.E.2d at 674-75.  However, Mr. Socha had no evidence by reputation or for that matter by

character to show that Mr. Edwards was an aggressor in order to sustain a reasonable presupposition

that Mr. Edwards would cause Mr. Socha death or great bodily harm, as in the case of battered

woman syndrome.


Granted the trial court expressed the same disbelief, as expressed by the trial court's decision

on appeal in *Koss,* that an expert is giving "knowledge to a jury about something the jury knows as

well as anyone else, namely, the reasonableness of the victim's fear of imminent serious danger."

*Koss*, 49 Ohio St.3d at 217; and see TR. at 15.[3]  However, unlike *Koss*, the psychiatrist in this case

had no "syndrome" on which to testify.  As the trial court explained there was merely a "history"

---

[3] The trial court explained, "If the jury wants to believe Mr. Socha and Mr. Edwards either got into a fight , but Mr. Socha was in fear, I don't think anything this doctor can testify to, based on this report is going to assist the trier of fact in this case with respect to reaching a verdict as to self-defense." (TR. at 15).

1:03 CV 1847                                                    11

between these two individuals.  More importantly, as the trial court noted, the psychiatrist's report was more descriptive of events that occurred afterwards (TR. 13, 16).  This expert testimony was certainly irrelevant for purposes of self-defense or the other comingled affirmative defenses.

In short, there was nothing at all similar to *State v. Koss* presented in Mr. Socha's arguments. Consequently, the exclusion of Dr. Bertschinger was not an unconstitutional impingement on Mr. Socha's ability to present a defense and reviewing his argument as either a matter *de novo* or deferentially yields the same result.  This evidence had minimal if any probative value.  Mr. Socha had not carried his burden of establishing that the state court decision was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States under 28 U.S.C. §2254(d)(1).  Further, although there was some confusion on the part of the state appellate court as to the procedural events at trial surrounding the motion to introduce expert testimony, favorable resolution of the factual dispute does not alter the fact that the first ground lacks merit.

Ground two:          Petitioner was denied due process and his right to a fair trial under the 14th Amendment to the United States Constitution when the trial court committed reversible error by charging the jury that they could

1:03 CV 1847                                              12

not reduce murder to manslaughter unless they first found Petitioner guilty of murder.[4]

The trial court instructed the jury stating:

> *If you find that the State proved, beyond a reasonable doubt all the essential elements of murder,* you will continue your deliberations and decide from all the evidence in your judgment whether the defendant acted while under the influence of sudden passion or in a sudden fit of rage, either of which was brought on my serious provocation occasioned by Edward Edwards, a provocation that was reasonably sufficient to incite the defendant into using deadly force.  (emphasis supplied).

(TR. 1042, 1065).[5]

Mr. Socha argued to the Ohio Supreme Court that "[t]he jury was never informed that they did not have to reach a verdict of guilty on the murder charge before being allowed to consider the voluntary manslaughter charge.  Voluntary manslaughter was effectively removed from their consideration because they were not allowed to consider the inferior-degree offense until it found Mr. Socha guilty of murder."  (Memorandum in Support of Jurisdiction at 7, Exhibit 18, ECF No. 11).

---

[4] The 1974 Committee Comment states that "voluntary manslaughter remains a lesser included offense to both aggravated murder and murder."  Ohio Rev. Code §2903.03 (Anderson 2002).  The statute as amended through 1996 provided:

> (A)     No person, while under the influence of sudden passion or in a sudden fit of rage, either which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another or the unlawful termination of another's pregnancy.

> (B)     Whoever violates this section is guilty of voluntary manslaughter, a felony of the first degree.

*Id.*

[5] The instruction was repeated in response to the jury's question on the definition of the crimes of voluntary manslaughter, murder and self-defense (TR. 1063).

1:03 CV 1847                                           13

The state appellate court analyzed this argument claiming that Mr. Socha made precisely the opposite argument complained about in *State v. Benge*, 75 Ohio St.3d 136, 139-41 ,661 N.E.2d 1019 (1996).  Mr. Socha takes issue with this statement and further takes issue with the statement by the state appellate court that the trial court's instruction to the jury was consistent with §503.02 of Ohio Jury Instructions.  See *Socha*, 2001 WL 498613*5.  The undersigned agrees the state appellate court evaded consideration of the constitutional issue.  Again the state appellate court's decision did not directly address the claim before it and again the undersigned finds that the state appellate court's initial reference to a lack of merit is the basis for a deferential standard of habeas review.

Respondent points out that in order to warrant habeas relief jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they render the entire trial fundamentally unfair citing *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) and *Henderson v. Kibbe*, 431 U.S. 145, 154, 197 S.Ct. 1730, 52 L.Ed.2d 203 (1977).

In a nutshell, due process is offended when the instruction had the effect of shifting the prosecution's burden upon defendant.  See *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Martin v. Ohio*, 480 U.S. 228, 233-34, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987); *Sandstrom v. Montana*, 442 U.S. 510, 524, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).  *Patterson v. New York*, 432 U.S. 197, 206-07, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *Mulaney v. Wilbur*, 421 U.S. 684, 690-91, 95 S.Ct. 1881, 1886, 484 L.Ed.2d 508 (1975).  In *Martin*, the Supreme Court reviewed Ohio's self-defense procedure and instruction and found no constitutional infirmity in requiring the State to prove the elements of aggravated murder to be followed by justification that the actions

1:03 CV 1847                                   14

were taken in self-defense.  See *Id.*, 480 U.S. at 231.  Ohio did not "shift to the defendant the burden of disproving any element of the state's case."  *Id.*, 480 U.S. at 234.

Mr. Socha's arguments are encompassed in the Sixth Circuit's review of Ohio voluntary manslaughter provision in *Rhodes v. Brigano*, 91 F.3d 803 (6th Cir. 1996), *cert. denied*, 520 U.S. 1254, 117 S.Ct. 2415, 138 L.Ed.2d (1997).  As in Mr. Socha's situation, the instruction at issue in *Rhodes* required the jury to find proof beyond a reasonable doubt of the elements of murder.  See *Id.*, 91 F.3d at 806.  The court found that the proof of sudden passion or sudden fit of rage would not necessarily negate the "purposeful" *mens rea* element of murder and found no due process violation.  *Rhodes*, 91 F.3d at 807-09.  As explained in *Rhodes*, the voluntary manslaughter statute is "poorly drafted and creates confusion."  However, " [t]he fact that the Ohio Supreme Court has chosen to characterize the 'mitigating circumstance' of sudden passion or sudden fit of rage is something akin to an affirmative defense is constitutionally irrelevant.  The constitutional inquiry, rather, is whether sudden passion or sudden fit of rage bears the necessary relationship to an element of the offense of murder such that shifting the burden to the defendant on the issue negates an element of the crime."  *Id.* at 809.  Nonetheless, "the defendant can be convicted only of voluntary manslaughter and *that* only upon proof beyond a reasonable doubt that defendant knowingly caused the death of another."  *Rhodes*, 91 F.3d at 809-10 n. 2.  Accordingly the instruction did not unconstitutionally shift the burden of what is tantamount to an affirmative defense under state law.   Mr. Socha has not shown that the state decision was contrary to or an unreasonable application of clearly

1:03 CV 1847                                     15

established federal law nor has he shown an unreasonable determination of the facts with respect

to the facts relevant to the constitutional implications of his argument.[6]

> Ground three:          Petitioner was denied due process under the 14th
>                         Amendment to the United States Constitution when
>                         the evidence adduced at trial was insufficient in light
>                         of evidence substantiating Petitioner's self-defense
>                         claim.

Respondent argues that Mr. Socha's third ground for relief is without merit as being non-

cognizable for purposes of habeas corpus review.  In his traverse Mr. Socha agrees (ECF No. 27 at

23).   Consequently, Mr. Socha concedes there is no reviewable error for habeas review on this

ground.

> Ground four:           Petitioner was denied the effective assistance of
>                         counsel at trial when trial counsel failed to adequately
>                         investigate the case, failed to present valuable defense
>                         evidence,   and   otherwise   provided   deficient
>                         representation at trial.

Respondent contends that federal review of this final ground is barred due to procedural

default.  This argument is surprising.  Mr. Socha  presented this ground as the second assignment

of error in  appeal from the trial court's denial of the post-conviction petition.  (See *State v. Socha*,

2002 WL 538754 (Ohio App. 8 Dist. Apr. 11, 2002)), and as the third proposition of law in appeal

to the Ohio Supreme Court (See Respondent's Exhibit 35, ECF No. 11).  The state appellate court

---

[6] Mr. Socha's companion arguments over the trial court's departures from the model jury instruction in Ohio Judicial conference, *Ohio Jury Instructions* fail to present a constitutionally based claim.

1:03 CV 1847                                   16

had ruled on the merits applying the two-prong formula of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  The state appellate court found that trial counsel's performance was not objectively unreasonable and that there was no prejudice (no "reasonable probability that for his retained counsels' unprofessional errors, the result of the proceeding would have been different").  *Socha*, 2002 WL 538754*6.  Obviously the state courts found no procedural bar and the federal district court can certainly not interject default since there is no "clear and express" reliance on a state procedural bar.  See *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

As presented to the Ohio Supreme Court, Mr. Socha maintained that trial counsel were ineffective because: (1) counsel could have obtained fingerprint evidence to prove that appellant never did move the victim's car as alleged by the prosecutor; (2) counsel failed to have a mantel clock, glass shelving and the broken glass checked for the victim's fingerprints (proving that Mr. Edwards' fingerprints were on these items, substantiating appellant's claim that Mr. Edwards brought these items as an excuse to validate his coming to appellant's house to obtain appellant's copy of a damaging videotape which exposed Mr. Edwards' secret double life, and also showing that the broken glass was used as a weapon by Mr. Edwards' attacking appellant); (3) counsel failed to have the victim's car checked for blood evidence to prove that appellant never moved the victim's car (proving that appellant did not move the car at any time and that Mr. Edwards parked his car away from appellant's home so that his car would not be noticed as he gained unauthorized access to appellant's home the second time); (4) counsel failed to waive appellant's speedy trial right so

1:03 CV 1847                                          17

that a thorough investigation of the case could be initiated and he would have had time to investigate

the arresting officer, Heather Miksch (counsel could have discovered blood evidence showing

appellant was indeed injured and bleeding, and scheduled appellant for a medical exam in support

of the self-defense claim, counsel was put on notice that appellant was having vision problems when

he told counsel that he couldn't see well enough to write a letter to counsel; and (5) counsel failed

to present medical evidence at trial (Dr. Bullock found to a reasonable medical certainty that a

macular hole in appellant's right eye was a proximate result of his struggle with the victim)

(Memorandum in Support of Jurisdiction at 11-12, Exhibit 35, ECF 11).  Mr. Socha is not now

pursuing the speedy trial claim.


In *Strickland*, the Supreme Court held that in order to establish ineffective assistance of trial

counsel, a defendant must show "that counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment . . . [and] that the

deficient performance prejudiced the defense."  *Strickland*, 466 U.S. at 686-87; *Broom v. Mitchell*,

441 F.3d 392, 408 (6th Cir. 2006) (citing *Strickland*.)  Elaborating further, the Supreme Court

explained: "[t]he proper measure of attorney performance remains simply reasonableness under

prevailing norms, "(*Id.* at 688), and review is conducted under the principle that "a strong

presumption of counsel's conduct falls within the wide range of reasonable professional assistance."

*Id.* at 689.


The state court applied the correct federal standard of review for effective assistance of

counsel under the Sixth Amendment.  Consequently it is not enough to convince a federal habeas

1:03 CV 1847                                18

court that in its independent judgment the state court decision was incorrect.  Rather, Mr. Socha

must show that the state decision applied *Strickland* to the facts of the case in an objectively

unreasonable manner.  See *Bell v. Cone*, 535 U.S. 685, 698-99, 122 S.Ct. 1843, 152 L.Ed.2d 914

(2002); *Williams v. Taylor*, 529 U.S. 362, 409, 410, 120 S.Ct. 1495, 1521-22, 146 L.Ed.2d. 389

(2000).


Mr. Socha testified that he was pushed to the ground and Mr. Edwards grabbed a glass

goblet, broke it and jabbed the glass in Mr. Socha's face, forcing him to again fall back, with his

head striking the concrete floor (TR. 837-40).  Mr. Socha testified he defended himself by pushing

Mr. Edwards away with his legs and then reached into a cabinet where he grabbed a hammer and

began to strike Mr. Edwards (TR. 841-84).


The complaints fall into two categories, blood evidence and head trauma, both of which

would tend to support self-defense.  Mr. Socha's problem was the ubiquitous presence of Mr.

Edwards' blood, with very little of his own.  Officer Heather Miksch testified that after the fire was

extinguished she entered Mr. Socha's house and observed the water-soaked floor smeared with

blood, the mallet-type hammer "covered in blood," a trash bag containing sawdust "soaked in

blood," a bloodied newspaper and a shovel with blood on it (TR. 287-88).


*Cadillac keys and interior:*

In closing, Mr. Socha and the prosecution presented to the jury opposite theories to account

for the lack of blood in the interior of Mr. Edwards' white Cadillac and the blood stained car keys

1:03 CV 1847                                             19

for that car.  Those keys, change, and watch were found in a pool of blood by the side of Mr.

Socha's garage  where the trail of blood ended (TR. 292).  There really was no question that the

blood on the Cadillac car keys was that of the victim since they were retrieved from the pool of

blood where the body had rested before being loaded into Mr. Socha's pickup truck.


        Trial counsel submitted affidavits stating that they were aware that the Cuyahoga County

Coroner's Office had inspected and performed thorough tests for blood and fingerprints on the

deceased's automobile and keys.  *Socha*, 2002 WL 538754 at *6.   Mr. Socha objects to counsel's

statement that thorough testing was done concerning Mr. Edwards' vehicle as false based on

testimony of the tests conducted by the Cuyahoga County Coroner's office which showed that the

car keys  were not submitted for examination to determine the presence of blood and no Luminol

test was performed in the car to check for blood in the interior (TR. 432-3, 471, 493-94).   However

visual search of the Cadillac's interior was conducted and no blood was observed on the steering

wheel or dash (TR. 432-33).


        The forensic evidence showed that  there was only an unidentifiable fingerprint on the

Cadillac.  *Socha*, 2001 WL 498613*2.  It was defense counsel's theory that the absence of blood

in Mr. Edwards' vehicle (such as blood on the ignition) showed that Mr. Socha had not moved Mr.

Edwards' vehicle, but had just thrown the bloody keys (TR. 989-91).  The state's interpretation of

the evidence was that Mr. Socha had moved Mr. Edwards' car before he moved the body (TR.

1022).  The absence of Mr. Edwards' blood in the Cadillac was not conclusive.  Although the search

was not as thorough as Mr. Socha now would have liked, finding Mr. Edwards' blood in the vehicle,

1:03 CV 1847                                        20

as defense counsel pointed out, would have placed Mr. Socha in the Cadillac (TR. 989, 991).  There

was non probable evidence of self-defense obtainable.  Counsel's performance was effective.  In

short, the evidence was ambivalent and further examination of Mr. Edwards' vehicle for additional

evidence concerning the contents would not have  necessarily  exonerated Mr. Socha.


As for Mr. Socha's claim that Mr. Edwards attempted to stab him with a broken goblet,

defense counsel had tests performed on the drinking glasses.  Trial counsel had stated in their

affidavits that tests were performed on the drinking glasses in Mr. Socha's house.  Mr. Socha in his

brief did confirm that the glass found on the kitchen floor was tested for blood but none was found

(TR. 482-3).  See Appellant's Brief, Exhibit at 5, Exhibit 29, ECF No. 11).  Counsel's performance

was effective.


As for additional time for counsel to investigate the observations of Officer Mitksch

concerning the presence of blood, contrary to Mr. Socha's claims, the Coroner's Office had

conducted DNA testing and had found evidence of Mr. Socha's blood (TR. 487-89).  DNA testing

of the blood from Mr. Socha's hands revealed, however,  that it matched Mr. Socha's (TR. 488).


Officer Miksch did observe the blood on Mr. Socha's hands (and there was evidence that it

was Mr. Socha's own blood).  However, the officer testified that she asked Mr. Socha to show him

his wrists (where she saw scratches) and she gave him a "quick overview" and did not see a source

of the blood (TR. 305).   Mr. Socha, however, claims that Officer Miksch testified that she saw

blood in his hair, but that simply is not true.  She testified that when she first observed Mr. Socha

1:03 CV 1847                                        21

she thought it was a possible suicide attempt because "he had blood on his wrists and on his shirt." (TR. 281).  Counsel's performance was effective.  The officer testified what she saw and counsel could not counter this testimony with phantom evidence to fit Mr. Socha's alleged head injury claim.

*Head Trauma:*

Finally with respect to the evidence of head injury resulting in Mr. Socha's partial or decrease of vision, the state court relied on counsel's representation that Mr. Socha did not indicate that his eye was injured until after conviction.  Mr. Socha points out that he was having trouble with his eyes and that counsel knew that he needed assistance in penning a letter.  (See Amended/Supplemental Petition, Exhibit C, Exhibit 22, ECF No. 11).

However, it is interesting to note that despite Mr. Socha's alleged visual impairment he states in this letter, "I am deeply and frantically concerned because page 36 contains perjured testimony from Carla Tricarichi."  This letter clearly does not support a complaint of visual impairment, much less support Mr. Socha's claim of eye injury related to the altercation.  As the state appellate court found, counsel's performance was certainly not put in question by this letter.  Counsel clearly stated in their affidavit that at no time did Mr. Socha indicate he had any visual problems as a result of his encounter with the deceased.

Related to this, Mr. Socha faults counsel's failure to present Dr. Bullock's report who found to reasonable medical certainty that the macular hole in his right eye was a direct and proximate

1:03 CV 1847                                     22

result of the struggle with the victim.  (Amended/Supplemental Post-Conviction Petition, Exhibit

A, Exhibit 22, ECF No. 11).  This medical report was dated July 19, 2000, which was after the trial.

Obviously since counsel had no awareness of Mr. Socha's vision problem allegedly due to the

altercation, counsel would have no reason to obtain medical evidence.

Finally, Mr. Socha attempts to interject a new claim concerning the mixture of blood found

on the dollar bill found in his pocket among his other efforts to expand the arguments beyond those

presented to the Ohio Supreme Court.  These claims were not "fairly presented" to the Ohio

Supreme Court and thus are procedurally defaulted.  See *Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir.

2004); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  In any event, Mr. Socha has not shown an

unreasonable application of *Strickland* by the state courts to his arguments.

### *CONCLUSION AND RECOMMENDATION*

Following review of the arguments raised in the petition and applicable law, Michael P.

Socha has not demonstrated that he was in custody pursuant to state court judgment that resulted

from a decision that was contrary to or involved in an unreasonable application of federal law as

determined by the Supreme Court of the United States, or is the result of a decision based on

unreasonable interpretation of the facts in light of the evidence in this state court proceeding.  See

28 U.S.C. §2254(d)(1) and (2).  Moreover, review of the record shows no error resulting in denial

of fundamental fairness or actual innocence of the petitioner.  Finally, there has been no

demonstrated need for an evidentiary hearing and it is therefore recommended that Mr. Socha's

petition for habeas corpus relief under 28 U.S.C. §2254 be denied and dismissed.

1:03 CV 1847                                      23

*Motions for Temporary and Preliminary Injunction:*

Several motions seeking injunctive relief were filed by petitioner in response to his current crisis of threatened confiscation of his legal materials. (Memorandum of Law in Support of Motion for TRO at 1, Docket No. 30). The first bar against adjudicating these claims is that petitioner's case was brought under 28 U.S.C. §2254. However, the court cannot reach petitioner's issues under §2254 because there has been no state court adjudication. Relief can only be granted under 28 U.S.C. §2254(d)(1) upon the showing that the state court's decision was "contrary to" or an "unreasonable application" of clearly established federal law as determined by the Supreme Court of the United States. Therefore no relief is available.[7]

Further, for the court to construe the petitioner's motions as an effort to assert a claim under 42 U.S.C. §1983 for violation of the First Amendment right to access to courts, the allegations are insufficient to circumvent the bar under 42 U.S.C. §1997e(a), that directs "No action shall be brought with respect to prison conditions under Section 1983 . . . , or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." This exhaustion of administrative remedies requirement, "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). As stated in *Royster v. U.S.*, "it . . . does not matter whether the prisoner's challenge is to a systemic

---

[7] Also success would be dubious because he is asserting a First Amendment denial of right of court access claim based on seizure of legal materials, which is unprecedented as a federal habeas claim. He is *pro se* and in *Kane v. Garcia Espatia*, - U.S. -, 126 S.Ct. 407, 163 L.Ed.2d 10 (2005), the court turned down a similar claim for law library access via the Sixth Amendment under §2254 brought by a *pro se* litigant.

1:03 CV 1847                                        24

problem or to one that is individual, or, for that matter, to whether the alleged misconduct is pursuant to a prison policy or *ultra vires*.  Thus, . . . plaintiff was still required to exhaust his administrative remedies regardless of whether the prison officials confiscated his legal materials pursuant to a particular prison policy or whether they took them without any apparent legal authority whatever." *Royster v. U.S.*, 91 F.Supp.2d 626, 628 (S.D. N.Y. 2000), vacated in part 8 Fed. Appx. 33 (2nd Cir. 2001), appellate judgment vacated 535 U.S. 901 (2002), district court's decision affirmed, 104 Fed. Appx. 215 (2nd Cir. 2004).

Petitioner does state in his declaration in support (Exhibit A to Docket No. 30) that he utilized the informal complaint resolution process on July 24, 2006 to no avail and on August 7, 2006 did file a notification of grievance (*Id.* Exhibit B). He further states in his emergency supplemental memorandum and the declaration dated August 29, 2006  that on August 21, 2006 he filed an additional informal complaint to the supervisor, "complaining to the prison officials that they are circumventing the judicial process by ordering me to reduce all my legal materials to fit into a single 2.4 cubic foot locker box by 9/1/06."  However, these allegations fall just short of establishing complete exhaustion of prison administrative remedies.  Presumably, however, since the 9/1/06 deadline has passed, petitioner will have received a resolution to his grievance either favorable or unfavorable.  But at this time the prerequisite showing of exhaustion of prison remedies has not been established.

1:03 CV 1847                                         25

### *CONCLUSION AND RECOMMENDATION*

Accordingly, it is recommended that petitioner's motion for preliminary injunction (Docket No. 30) and emergency supplemental motion for temporary restraining order and preliminary injunction (Docket No. 31) be denied.

                                     s/James S. Gallas
                              United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).


Dated: September 14, 2006