**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Michael Socha,** | ) | **CASE NO. 1:03 CV 1847** |
| | ) | |
| **Petitioner,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Julius Wilson, Warden,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Respondent.** | ) | |

This matter is before the Court upon the Report and Recommendation of Magistrate Judge Gallas (Doc. 32) which recommends denial of the Petition for Writ of Habeas Corpus now pending before the Court. For the following reasons, the Report and Recommendation is ACCEPTED.

**Introduction**

Petitioner, Michael Socha, commenced this action with the filing of a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner is incarcerated after a jury trial in the Cuyahoga County Court of Common Pleas. This matter has been fully briefed and the Magistrate Judge issued his Report and Recommendation recommending that the Petition for

1

Writ of Habeas Corpus be denied. Petitioner has filed Objections to the Report and Recommendation.

**Standard of Review**

Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts provides, "The judge must determine *de novo* any proposed finding or recommendation to which objection is made. The judge may accept, reject, or modify any proposed finding or recommendation."

**Discussion**

Petitioner was convicted of murder. The state appellate court found the following pertinent facts:

> Defendant's sister had been married to the victim [Edward Edwards] until she died of cancer in 1993. Defendant and the victim ultimately became involved in probate court litigation concerning her estate. The litigation included allegations that the victim was not legally divorced from his prior wife before his marriage to defendant's sister, Lucy. In the probate litigation, the victim was claiming property as her spouse, whereas defendant was seeking to claim the property under his sister's will as if she had never been married to the victim. Defendant and the victim settled the litigation in [sic] February 16, 1999, six weeks before the murder on April 30, 1999.
>
> The prosecution presented testimony from eighteen witnesses. The prosecution's theory was that defendant struck the smaller and older victim, who was 78 years of age and weighed only 134 pounds, in the head 13 times with a hammer. Deputy coroner McCollum performed an autopsy on the victim. She testified that the victim died of injuries resulting from blows to his skull and brain. Each blow was of sufficient force to have caused his death. He had defense wounds on his body. She also noted that the victim had consumed approximately seven drinks of alcohol within one to three hours of his death.

*State v. Socha*, 2001 WL 498613 (Ohio 8th App. Dist.May 10, 2001) A witness testified that she observed defendant in the Metroparks dumping a body in the woods. The body was later recovered there. Ultimately, Cleveland police officers determined that the homicide occurred at

2

defendant's residence and they confronted him there.  A Cleveland police officer testified that

> [a]s she approached the house, defendant came toward her. He had blood on his shirt and hands and no injuries. She placed defendant in her squad car. She called the fire department after smelling smoke and hearing a smoke alarm in defendant's house. She entered once the fire was extinguished and saw blood on the kitchen floor, a hammer with blood on it, and a trail of blood to a smoldering barrel of blood-soaked sawdust. [Another officer] corroborated her testimony.

*Id.*  Forensic testimony did not reveal any of defendant's blood on various objects, including a broken goblet, taken from defendant's house.  Nor did defendant have any physical injuries.

Defendant's theory of the case was that he was attacked by the victim and he testified that

> the victim came over to his house on April 30, 1999 with a clock, which defendant stated he was not interested in. Rather, defendant wanted some pictures of his parents, pictures that the victim had retained. The victim asked him for a drink, and they both sat drinking for hours watching a videotape deposition of Lucy. Defendant maintained that the victim left at 5:40 p.m. and that defendant also left for Lakewood. Defendant stated that when he returned ten minutes later to get a key he had forgotten, the victim was in his kitchen going through papers located with the videotape deposition.

*Id.*  Defendant testified that

> [he] told the victim to leave, but the 78- year-old victim got between him and the phone, stated he was going to take the videotape, and ordered defendant not to call the police. The altercation escalated into pushing. Defendant was knocked down twice, and the victim broke a glass goblet, which he jabbed at defendant. The victim tried to stab him again, so defendant swung the hammer he had picked up. Defendant fell down and tried to escape, but the victim attacked him again. Defendant struck him with the hammer again.
>
> Defendant stated he put the victim in a tarp, drove to the Metroparks, and dumped the body in the woods because he was scared. He drove home despite the orders of the park rangers directing him to stop. He stated that he also remembered the fire and calling his friend ...  He maintained that he did not intend to kill the victim and was in fear for his own life.

*Id.*

Petitioner asserts four grounds in support of habeas relief but concedes that his third

3

ground is non-cognizable (Doc. 27 at 23, Doc. 37 at 2). The Magistrate Judge found the remaining three grounds to be without merit.

Ground One asserts that petitioner was denied due process when the trial court would not allow expert opinion evidence which would have helped the jury. In an abundance of caution, this Court will apply a *de novo*, rather than deferential, standard of review to this issue as there is a dispute as to whether the state appellate court reached the merits of this claim.

Before trial, defendant filed a motion to permit his psychiatric evaluation. Attached to the motion was a psychiatric evaluation of defendant conducted by Dr.Bertschinger, a five-page report in which the doctor concluded:

> Pertaining to the defendant's behavior following the physical confrontation, it is my opinion that the defendant was overwhelmed by the reality of what had happened, that his reason and judgment were impaired by the alcohol and that his subsequent acts were irrational and symbolic as opposed to any meaningful attempts to cover his crime.

The trial court barred defendant from presenting this evidence because it would not assist the jury in that the jury could decide whether or not defendant was in fear of death or great bodily harm.

Petitioner argues that the trial court should have permitted this evidence regarding defendant's actions after the victim's death to show that they were consistent with an act of self-defense, especially given that the prosecution argued (in opening statements and closing arguments) at trial that defendant's actions after the victim's death established that the homicide was not an act of self-defense. Petitioner asserts that the jury rejected his self-defense claim either entirely or in large part because it was persuaded by the prosecutor's argument that defendant's actions after the victim's death were not those taken by someone who acted in self-

defense.

>The Supreme Court has summarized the appropriate standard of review:
>
>Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.  This right is abridged by evidence rules that infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve.
>
>While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. An application of this principle is found in rules regulating the admission of evidence proffered by criminal defendants to show that someone else committed the crime with which they are charged.

*Holmes v. South Carolina,* 126 S.Ct. 1727 (2006) (internal quotations and citations omitted).

Petitioner argues that Dr. Bertschinger's testimony was relevant and the trial court's decision to not allow it denied him the opportunity to present a complete defense.  Petitioner points out that the trial court did not cite any state rule of evidence to bar the testimony, or engage in any gatekeeping analysis so as to determine whether the testimony was scientifically reliable.  This Court, however, agrees with the Magistrate Judge's conclusion that the evidence had minimal, if any, probative value.

The motion filed in the trial court sought to introduce the testimony "as related to the state of mind of defendant regarding his claim of self defense" pursuant to *State v. Koss,* 49 Ohio St.3d 213 (1990), which recognized that the battered woman syndrome had gained substantial scientific acceptance to warrant its admissibility into evidence.  (Doc. 11 at 22) The trial court addressed the motion on the record prior to the commencement of trial.  Defense counsel argued

5

that the psychiatrist's testimony was relevant to defendant's state of mind given that defendant and the victim had a long history together, and to defendant's actions after the death of the victim. The trial court concluded that the jury would be able to ascertain these issues without the help of expert testimony. (Doc. 12 at 12-17) This Court agrees. Moreover, unlike *Koss,* there was no "syndrome" involved but rather a history between defendant and Mr. Edwards which did not reveal that the latter had a reputation or character for being an aggressor. Further, the psychiatrist's report mainly involved the events occurring after the death of Edwards and while the prosecutor may have argued that these events were not indicative of an act of self-defense, the expert testimony was not relevant to whether defendant was in imminent fear of death or great bodily harm at the time that Edwards died.

This ground lacks merit.

Ground Two asserts that petitioner was denied due process and his right to a fair trial when the trial court charged the jury that it could not reduce murder to manslaughter unless it first found petitioner guilty of murder.

The Court will again apply a *de novo* standard of review due to the state appellate court's failure to reach the merits of the constitutional claim.

The trial court delivered the following instruction:

If you find the State proved beyond a reasonable doubt all the essential elements of murder, you will continue your deliberations and decide from all the evidence in your judgment whether the defendant acted while under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by Edward Edwards, a provocation that was reasonably sufficient to incite the defendant into using deadly force.

(Doc. 14 at 1042) The instruction was repeated after the trial court received a note from the jury requesting the definitions of voluntary manslaughter, murder and self-defense. (*Id.* at 1065)

6

Petitioner argues that the instruction was erroneous in that the jury was never informed that it did not have to reach a verdict of guilty on the murder charge before considering the voluntary manslaughter charge.  Petitioner asserts that the trial court's failure to properly instruct the jury that it could consider voluntary manslaughter while simultaneously considering murder prevented the jury from properly applying the law to the facts of the case, contrary to *U.S. v. Gaudin,* 515 U.S. 506 (1995) ("[T]he jury's constitutional responsibility is not merely to determine the facts, but to apply the law to those facts and draw the ultimate conclusion of guilt or innocence.")

As the Sixth Circuit recognized in *Rhodes v. Brigano,* 91 F.3d 803, f.n. 2 (6th Cir. 1996), however,

> if the defendant establishes the existence of one of the mitigating circumstances by a preponderance of the evidence, the prosecution's proof beyond a reasonable doubt of the elements of murder is irrelevant; the defendant can be convicted only of voluntary manslaughter, and *that* only upon proof beyond a reasonable doubt that the defendant knowingly caused the death of another. Of course, this last statement is not obvious from the language of the murder and voluntary manslaughter statutes, but rather arises from the longstanding view of Ohio courts that sudden passion or a sudden fit of rage reduces what would otherwise be murder to voluntary manslaughter.

Thus, there was no constitutional violation where the jury was instructed to first find defendant guilty of murder before considering the affirmative defense of voluntary manslaughter.

This ground lacks merit.

Ground Four asserts that petitioner was denied effective assistance of counsel when trial counsel failed to adequately investigate the case and present valuable defense evidence, and otherwise provided deficient representation at trial.

Petitioner argues that his attorneys inadequately prepared to establish self-defense at trial

7

and made no use of the evidence that proved the theory.

Petitioner testified at trial that Edwards stood between himself and the telephone and said, "You are not going to call the police." Edwards then shoved defendant away from the telephone. After more shoving between the two, Edwards knocked defendant to the ground. Edwards then grabbed a glass goblet, broke it and jabbed it towards defendant's face. This caused defendant to fall back, hitting his head on the floor. Defendant pushed Edwards away with his legs and then reached into a cabinet, grabbing a hammer which he used to strike Edwards. (Doc. 14)

Petitioner points out that DNA evidence presented by the State established a small amount of defendant's own blood on two of his fingers and a dollar bill found in his pocket. Testimony showed that defendant had no apparent injuries to his hands, wrists and arms. Police officer Heather Miksch testified that defendant "appeared to have some [blood] in his hair" (Doc. 12 at 317) which, petitioner asserts, corroborated defendant's testimony that he hit his head on the floor during the struggle with Edwards. A medical report (dated after the trial, however) stated that defendant suffered a macular hole as a result of his injury. Thus, petitioner asserts, the evidence showed he was bleeding and, given no other source of injury, the blood must have come from his head injury. Yet, petitioner asserts, his counsel failed to rely on this evidence to prove self-defense. Counsel made no mention during closing argument of defendant's blood being spilled on the scene or that the blood could only have come from his head injury suffered in the struggle. Rather, the prosecution argued, without defense objection, that defendant was not injured at all.

Defense tests showed that no blood was found on the glass goblet. Even if the jury heard

8

argument that defendant suffered an injury while struggling with Edwards which showed that he acted in self-defense, it is unlikely, given all the evidence, that the jury would have exonerated defendant based on this argument.  As such, prejudice has not been established and accordingly, ineffective assistance of counsel has not been shown.

This ground lacks merit.

For the foregoing reasons, petitioner has not demonstrated that the Petition for Writ of Habeas Corpus should be granted. [1]

**Conclusion**

For the reasons set forth herein and for the reasons set forth in the Magistrate Judge's Report and Recommendation, the Petition for Writ of Habeas Corpus is denied.  Further, this Court hereby fully incorporates the Report and Recommendation by reference herein.

This Court now considers whether to grant a certificate of appealability (COA) pursuant to 28 U.S.C. § 2253 which states in relevant part:

> \*\*\*
>
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court . . .
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

In *Slack v. McDaniel*, 529 U.S. 473 (2000), the United States Supreme Court determined

---

[1] The Magistrate Judge also recommended that two pending motions filed by petitioner for injunctive relief be denied.  Petitioner did not object to this recommendation.  Having found no clear error, this portion of the Report and Recommendation is accepted as well.

that

> "[t]o obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'"

*Id.* at 483-4 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) ).

If the claim is not procedurally defaulted, then a habeas court need only determine whether reasonable jurists would find the district court's decision "debatable or wrong." *Id.* at 484. In instances where a claim is procedurally defaulted, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* (emphasis supplied).

For the reasons stated above and in the Report and Recommendation, this Court finds no basis upon which to issue a certificate of appealablity.

IT IS SO ORDERED.

                                 /s/ Patricia A. Gaughan
                                 PATRICIA A. GAUGHAN
                                 United States District Judge

Dated: 2/20/07